J-S44008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK JAMES GARCIA | : | |
| | : | |
| Appellant | : | No. 399 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 27, 2020
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s):  CP-49-CR-0000300-2017

BEFORE:  BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED NOVEMBER 18, 2020**

Appellant, Frank James Garcia, appeals from the judgment of sentence of 72 hours' to 6 months' incarceration, and a consecutive year of probation, imposed after he was convicted, *inter alia*, of driving under the influence (DUI) of a controlled substance.  Appellant challenges the trial court's denial of his pretrial motion to suppress, claiming that the stop of his vehicle was an illegal detention because it was not supported by probable cause.  After careful review, we affirm.

The trial court briefly summarized the facts of Appellant's case, as follows:

> On or about January 2, 2017, around 5:45 a.m., Officer [Kevin] Rushton of the Point Township Police Department observed … Appellant's vehicle in the Borough of Northumberland with headlights that were not illuminating the highway in front of the vehicle.  The officer conducted a traffic stop as a safety concern and for a probable violation of the vehicle code.  After the officer approached the vehicle and spoke with Appellant, the

officer could smell burnt marijuana emanating from the vehicle. Appellant was asked to step out of the vehicle and the officer conducted field sobriety tests. Upon conducting those tests, … Appellant was arrested for [DUI].

Trial Court Opinion (TCO), 5/5/20, at 1 (unnumbered). After Appellant's arrest, he was transported to the hospital where he consented to a blood draw. *See id.*

On August 30, 2017, Appellant filed a motion to suppress the evidence, arguing, *inter alia*, that the stop of his vehicle was illegal. On March 2, 2018, the trial court conducted a suppression hearing, at which Officer Rushton was the sole witness. On April 27, 2018, the court issued an order denying Appellant's motion to suppress. He proceeded to a non-jury trial on April 26, 2019. At the close thereof, he was convicted of two counts of DUI, 75 Pa.C.S. §§ 3802(d)(1)(i) and (d)(2); possession of drug paraphernalia, 35 P.S. § 780-113(a)(32); driving without a license, 75 Pa.C.S. § 1501(a); and operating a vehicle with unsafe equipment, 75 Pa.C.S. § 4107(b)(2). Appellant was acquitted of possession of marijuana, 35 P.S. § 780-113(a)(31), and driving without headlights, 75 Pa.C.S. § 4303(a). On January 27, 2020, Appellant was sentenced to the aggregate term of incarceration and probation set forth above. He filed a timely notice of appeal, and he complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on May 5, 2020.

Herein, Appellant states a single issue for our review:

1. Whether the trial court erred in denying Appellant's motion to suppress evidence when the stopping of Appellant's vehicle was done in violation of his rights under Article 1 Section 8 of the

Pennsylvania Constitution and under the Fourth Amendment to the United States Constitution because it was made without probable cause to believe that either Appellant or his vehicle was in violation of the Motor Vehicle Code?

Appellant's Brief at 7 (unnecessary capitalization omitted).

Preliminarily, we note:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (cleaned up).

Here, Appellant challenges the legality of Officer Rushton's stop of his vehicle, contending that the officer did not possess the requisite probable cause that Appellant's vehicle violated the Motor Vehicle Code (MVC).

In Pennsylvania, the authority that addresses the requisite cause for a traffic stop is statutory and is found at 75 Pa.C.S.[] § 6308(b), which provides:

**(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle,

upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver''s license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). In **Commonwealth v. Feczko**, 10 A.3d 1285 (Pa. Super. 2010) (*en banc*), this Court, consistent with our Supreme Court's clarification of constitutional principles under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution, stated with respect to § 6308(b):

> In light of our Supreme Court's interpretation of the current language of Section 6308(b), we are compelled to conclude that the standards concerning the quantum of cause necessary for an officer to stop a vehicle in this Commonwealth are settled; notwithstanding any prior diversity on the issue among panels of this Court. Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the [MVC] under the authority of Section 6308(b) must serve a stated investigatory purpose.
>
> * * *
>
> Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, "it is encumbent [*sic*] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.*" [**Commonwealth v.**] **Gleason**, … 785 A.2d [983,] 989 [(Pa. 2001)] (citation omitted)[, *superseded by statute,* Act of Sept. 30, 2003, P.L. 120, No. 24, § 17 (amending 75 Pa.C.S.[] § 6308(b))].

**Id.** at 1290–[]91 (emphasis added in **Gleason**). Accordingly, when considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the [MVC] has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further

- 4 -

investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop.

*Commonwealth v. Salter*, 121 A.3d 987, 992–93 (Pa. Super. 2015).

In this case, Appellant contends that Officer Rushton was required to have probable cause to stop his vehicle. In support, Appellant notes that, at the suppression hearing, Officer Rushton testified that he stopped Appellant's car because he believed that Appellant's headlights did not comply with the lighting requirements set forth in 67 Pa. Code § 175.66(a) and/or (b). **See** N.T. Suppression Hearing, 3/2/18, at 5. According to Appellant, "the stopping of a vehicle for a headlamp violation is not such a violation that would require further investigation." Appellant's Brief at 12. Therefore, Appellant insists that probable cause was required to validate the stop under this Court's holding in **Feczko**.

Appellant's argument is unconvincing. At the suppression hearing, Officer Rushton testified that Appellant's vehicle "had, like, blue lights on the front of it. And they didn't seem very bright." N.T. Suppression Hearing at 5. The officer testified that he believed Appellant's headlights did not meet the requirements of 67 Pa. Code § 175.66 (a) and/or (b). **Id.** Those provisions state:

> (a) *Condition of lamps and switches.* Every required lamp or switch shall be in safe operating condition as described in § 175.80 (relating to inspection procedure).
>
> (b) *Lighting standards.* A lamp shall comply with vehicle lighting equipment requirements of this title. See Tables II--IV; Chapter 153 and 75 Pa.C.S. § 4301.

- 5 -

67 Pa. Code § 175.66(a), (b). Other subparts of section 175.66, as well as section 175.80 and Tables II-IV of section 153, require, *inter alia*, that headlights have high beams and low beams, be within a certain range of candlepower, direct light properly, be a certain color, and "not be so obstructed by a screen, bar, auxiliary equipment or a device as to obscure, change the color of or obstruct beam." 67 Pa. Code §§ 175.66(c), (g); **see also** 67 Pa. Code §§ 175.80(9); 67 Pa. Code § 153 Appendix A.

Given the MVC's specific requirements for headlights, and the nature of the violations suspected in this case, we conclude that Officer Rushton was required to possess only reasonable suspicion to stop Appellant's vehicle. Our decision in **Salter** is instructive. There, an officer following Salter's car observed that the light above his license plate seemed to be out. **Salter**, 121 A.3d at 994. Notably, the officer "was able to confirm the violation by driving within 75 feet of [Salter's] vehicle and turning his headlights off. Once he turned his headlights off, he indeed confirmed the plate was not illuminated." **Id.** Accordingly, "[n]othing more was needed to be determined by [the o]fficer … upon a stop to verify that the plate light was not operating" and, therefore, probable cause was required to initiate the stop. **Id.** at 993-94.

The facts of **Salter** are distinguishable from the present case. Here, Officer Rushton testified that as Appellant's vehicle was driving towards him, he noticed that Appellant's headlights appeared to be blue in color and were not very bright. **See** N.T. Suppression Hearing at 4-5. However, Appellant's vehicle immediately turned right onto a side street, thereby requiring Officer

- 6 -

Rushton to follow the vehicle. *See id.* at 5. From that vantage point, the officer could not discern whether the color and/or luminosity of Appellant's headlights violated the requirements of the MVC without effectuating a traffic stop. Therefore, unlike in *Salter*, the officer required only reasonable suspicion to stop Appellant's vehicle because further investigation was necessary.

We further conclude that Officer Ruston possessed reasonable suspicion to conduct the stop. Our Supreme Court has declared that "under the present version of [s]ection 6308(b), in order to establish reasonable suspicion, an officer must be able to point to specific and articulable facts which led him to reasonably suspect a violation of the [MVC]…." *Commonwealth v. Holmes*, 14 A.3d 89, 95 (Pa. 2011) (emphasis omitted). Here, Officer Rushton testified that when he first observed Appellant's vehicle, it appeared that its headlights were blue in color and were not illuminating the roadway properly. *See* N.T. Suppression Hearing at 5. As the officer followed the vehicle, he "continued to see that it really wasn't illuminating much in front of it[,]" which "raised [the officer's] suspicion that it was almost a blue … auxiliary lighting, or [that the headlights] were the improper color." *Id.* These facts were sufficiently specific to demonstrate that Officer Rushton had reasonable suspicion to believe that Appellant's headlights violated the MVC.[1] Therefore, the officer

_____

[1] We add that the Commonwealth entered into evidence a video taken by the officer's dashboard camera, which the trial court viewed and "found that the

lawfully stopped Appellant's vehicle to further investigate, and the trial court did not err in denying Appellant's motion to suppress.[2]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2020

---

vehicle['s] headlights did not illuminate the highway properly…."  TCO at 1 (unnumbered).  We have likewise viewed the video, and conclude that it supports the trial court's factual finding.

[2] We recognize that the trial court denied Appellant's motion to suppress because it found that Officer Rushton possessed probable cause to support the stop.  While we conclude that probable cause was not required in this case, this Court is permitted to affirm the trial court "on any valid basis, as long as the court came to the correct result…."  **Wilson v. Transport Ins. Co.**, 889 A.2d 563, 577 n.4 (Pa. Super. 2005) (citations omitted).